IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| EBS of Ohio, Inc.<br>896 North Lexington Springmill Road<br>Mansfield, Ohio 44906,<br><br>Plaintiff,<br><br>v.<br><br>United Re AG<br>900 N.E. Loop 410<br>Suite E-105<br>San Antonio, Texas 78209<br><br>and<br><br>Hugh Scott<br>United Re AG<br>900 N.E. Loop 410<br>Suite E-105<br>San Antonio, Texas 78209,<br><br>Defendants. | Case No. C2 09 836<br>JUDGE SARGUS<br><br>Judge<br><br>Magistrate Judge<br><br>MAGISTRATE JUDGE ABEL<br><br>JURY DEMAND<br>ENDORSED HEREON |

## COMPLAINT

This action arises out of defendants' malicious efforts to interfere with plaintiff's business and contractual relationships in order to cover up the unlawful and unethical business practices of United Re AG. As a result of defendants' illegal conduct, plaintiff has suffered millions of dollars in damages. Indeed, defendants' conduct has pushed EBS to the brink of financial ruin.

## THE PARTIES

1. Plaintiff, EBS of Ohio, Inc. ("EBS"), is an Ohio corporation with its principal place of business in Mansfield, Ohio. EBS is a third-party administrator specializing in partial self-funding, allowing companies to provide medical insurance plans for employees by

taking a share of the claims risk. EBS has provided impeccable service to its customers for more than three decades.

2.      Defendant, United Re AG ("United Re"), is a Texas-based reinsurer. United Re provided stop-loss coverage for many clients of EBS. United Re has substantial and continuous contacts with the State of Ohio, including numerous contractual and customer relationships with Ohio residents.

3.      Defendant, Hugh Scott, is President and Corporate Counsel for United Re. Mr. Scott is directly responsible for making and/or directing other United Re employees to make false statements about EBS. Mr. Scott also has substantial and continuing contacts within the State of Ohio.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction in this matter pursuant to 28 U.S.C. §1332 (diversity jurisdiction), as the parties reside in different states, and the matter in controversy far exceeds $75,000.

5.      Venue is proper in the Southern District of Ohio, Eastern Division, because defendant conducts business within this Judicial District and the claims alleged herein arose, in part, within this Judicial District.

## BACKGROUND INFORMATION AND FACTS

6.      EBS provides medical and life insurance benefits to various customers across Ohio and the United States. EBS has provided this service for decades and has itself provided the prompt and timely administration of claims involving its clients.

7.      United Re entered into "stop loss" contracts with many of EBS's clients. Under these stop loss contracts, the employer would pay an employee's medical benefits up until a certain total cost was incurred. Once an employee's medical benefits reached that ceiling,

-2-

United Re would become responsible for paying the benefits. Additionally, United Re would have separate "aggregate" stop-loss contracts with EBS customers, whereby United Re would reimburse the customer for any medical costs above a predetermined total expense for all employees.

8. United Re entered into stop loss contracts with EBS customers pursuant to the terms of the United Re Trust Agreement. Those Trust Agreements made clear that EBS, as the Plan Supervisor, was responsible for performing administrative functions for the Beneficiary, including payment of claims. EBS, however, relied on defendant United Re to honor its obligations to pay claims that exceeded a certain threshold. Additionally, pursuant to the terms of this Trust Agreement, EBS functioned as the agent for its customers.

9. In October, 2007, EBS terminated its relationship with United Re due to questionable and substandard claims practices and a growing backlog of claims filed with United Re by EBS customers that were in some cases more than a year old.

10. Following the termination of its business relationship with United Re, EBS moved its client accounts to other stop loss providers to prevent further claims problems with United Re.

11. United Re, in retaliation for EBS' decision to terminate the business relationship and move its client accounts, began to claim to EBS clients that EBS had engaged in negligent and/or improper claims practices. United Re's retaliatory efforts to smear EBS were 100% false.

12. Notwithstanding the fact that EBS had already terminated the business relationship, defendants sent a letter to EBS on January 21, 2008 stating that "United Re has determined that it is necessary to terminate the relationship with EBS of Ohio, Inc." In its letter, defendants falsely accused EBS of:

- Improper investigation of claims concerning basic eligibility, enrollment, HIPAA, COB, COBRA, etc.
- Discretionary decisions concerning funding claims.
- Inconsistencies in PPO discounts, benefit payments, claim processing, follow up, and reprocessing.
- Undocumented payments, adjustments, refunds, and voids.
- Questionable communication with the providers, brokers, and clients concerning our claim decisions.
- Unsubmitted or late submission of claims.
- Possible overpayment or underpayment of specific deductibles by clients.
- Possible overpayments and underpayments of claims.

Although the letter was addressed to EBS only, defendants circulated the letter to many of EBS's most important customers.

13. After informing EBS's customers that EBS would no longer handle their claims, many of EBS's customers questioned United Re's actions. In response, United Re justified its termination of EBS by making additional false allegations concerning EBS's claims administration process.

14. Later in 2008, United Re made a false complaint to the Ohio Department of Insurance accusing EBS of "uprating" which is a process akin to double billing a customer. EBS has never engaged in uprating and has never once taken a commission from a customer that was not fully disclosed up front.

15. To make matters worse, defendants sent a letter to EBS customers on March 24, 2008 informing them that the Ohio Department of Insurance had launched a formal investigation against EBS for uprating without disclosing to EBS's customers that the allegations were false and that the allegations were initiated by United Re.

- 4 -

16. In fact, at all times, EBS was not mishandling claims. Rather, EBS was handling all claims properly, as audits of its claims handling processes demonstrated. Indeed, EBS has a history of more than three decades of flawless claims handling. EBS also had their files thoroughly reviewed by auditors and even offered third parties access to EBS files to confirm that EBS' practices were not only adequate, they were exemplary.

17. Defendant United Re also has harmed plaintiff's business reputation and interfered with current and prospective business relationships by failing to honor its obligation to pay claims in a prompt and timely manner thereby causing EBS to be sued on multiple occasions. EBS also has lost substantial business as a result of United Re's failure to pay claims in a timely manner.

18. As a result of United Re spreading false information about EBS to EBS customers and failing to pay claims in a timely manner, many EBS customers terminated their relationship with EBS. United Re's unlawful conduct has caused EBS to lose millions of dollars of business.

## COUNT ONE: TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS

19. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 18 as if fully restated herein.

20. EBS had business relationships with its clients.

21. Defendants, as is demonstrated by their correspondence with EBS clients, had knowledge of the business relationship between EBS and their clients.

22. By deciding to discontinue doing business with EBS, by its communications to EBS clients reflecting this decision, and by its communications to EBS clients maligning EBS, defendants intentionally interfered with those relationships, causing numerous EBS clients to terminate their relationships with EBS.

- 5 -

23. Defendants possessed no privilege entitling them to interfere with EBS's business relationships in this manner.

24. As a direct and proximate result of the acts and/or omissions of defendants, plaintiff has lost substantial revenue.

## COUNT TWO: TORTIOUS INTERFERENCE WITH CONTRACT

25. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 24 as if fully restated herein.

26. EBS entered into contracts with its clients.

27. Defendants were aware of the contracts between EBS and its clients.

28. Defendants' accusations regarding EBS's business practices and communications with EBS clients constituted intentional attempts to procure the breach of the contracts between EBS and its clients.

29. Defendants lacked justification for interfering with EBS's contractual relationships in this manner.

30. As a direct and proximate result of the acts and/or omissions of defendants, plaintiff has lost substantial revenue.

## COUNT THREE: BREACH OF CONTRACT

31. Plaintiff repeats and realleges the allegations set forth in paragraphs 1 through 30 as if fully restated herein.

32. United Re entered into Trust Agreements requiring United Re to pay the medical claims of EBS customers once these claims exceeded a certain threshold amount. EBS was designated the Plan Supervisor under the United Re Trust Agreements. As Plan Supervisor, EBS was obligated under the Trust Agreements to administer the claims, including claims that United Re was required to pay. [A copy of a representative Trust Agreement is attached hereto].

33. United Re had an express and/or implied duty of good faith and fair dealing to pay legitimate claims when they came due.

34. United Re breached the Trust Agreement and its duty of good faith and fair dealing by failing to pay legitimate claims when they came due and causing EBS to be sued on multiple occasions. EBS has not only incurred substantial legal fees to defend these lawsuits filed due to the unlawful conduct of United Re, EBS has lost substantial business as a result of United Re's failure to pay these legitimate claims in a prompt and timely manner.

35. As a direct and proximate result of United Re's unlawful conduct, EBS has suffered substantial revenue and incurred substantial expense in an amount to be determined at trial.

**WHEREFORE**, plaintiff under all counts of the Complaint requests the Entry of Judgment for the following relief:

A. Award plaintiff compensatory and punitive damages in an amount to be determined at trial;

B. Award plaintiff his attorneys fees and costs to prosecute this action; and

C. Award such other and further relief as may be just and proper.

Respectfully submitted,

Rex H. Elliott, Trial Counsel (0054054)
Charles H. Cooper, Jr. (0037295)
John C. Camillus (0077435)
Cooper & Elliott, LLC
2175 Riverside Drive
Columbus, Ohio 43221
(614) 481-6000
(614) 481-6001 (Facsimile)

Attorneys for Plaintiff
EBS of Ohio, Inc.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues triable under law.

_____
Rex H. Elliott